UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY CHARLES BAKER,

                   Plaintiff,

v.                                                                              1:15-CV-0787
                                                                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS           PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.              REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Gary Charles Baker ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on October 23, 1952. (T. 94.) He completed the 10th grade. (T. 108.) Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease ("COPD"), anxiety, emphysema, and bronchitis. (T. 107.) His alleged disability onset date is July 1, 2011. (T. 48.) He previously worked as a grinder, sorter, and retail. (T. 108.)

   B.  **Procedural History**

On August 1, 2012, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 48.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 28, 2014, Plaintiff appeared before the ALJ, Robert Wright. (T. 24-47.) On March 14, 2014, ALJ Wright issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-23.) On May 1, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law. (T. 14-20.) First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since August 1, 2012 the application date. (T. 14.) Second, the ALJ found that Plaintiff had the medically determinable impairments of COPD/emphysema, dysthymic disorder, anxiety, and cannabis abuse. (*Id.*) The ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that significantly limited Plaintiff's ability to perform basic work activities for twelve consecutive month. (T. 15.) Third, the ALJ found Plaintiff did not have a severe impairment or combination of impairments. (*Id.*)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's determination that Plaintiff does not have a severe impairment was not supported by substantial evidence. (Dkt. No. 12 at 2-3 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ erred in his determination that the consultative examination indicated a "normal" pulmonary examination. (*Id.* at 4.)

### B.  Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's step two determination was proper. (Dkt. No. 13 at 5-11 [Def.'s Mem. of Law].)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's Step Two Analysis and Ultimate Disability Determination

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff had a severe impairment, or combination of impairments, that

significantly limited his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 416.920(c), 416.921. Plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). A finding that Plaintiff does not have a severe impairment means Plaintiff was not disabled, and the ALJ's inquiry stops at the second level of the five-step sequential evaluation process. 20 C.F.R. § 416.920(c).

The following are examples of "basic work activities:" "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." *Gibbs v. Astrue,* No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 416.921(b)(1)-(5).

At step two, the ALJ determined that Plaintiff did not have a severe impairment. (T. 15-19.) The ALJ determined Plaintiff's medically determinable impairment of COPD was not severe based on the medical opinion evidence in the record and Plaintiff's testimony. (*Id.*) The medical evidence and Plaintiff's testimony are outlined herein.

In making his step two determination that Plaintiff's COPD was non-severe, the ALJ relied on the medical opinion evidence of consultative examiner, Kautilya Puri, M.D., non-examining State agency medical consultant, Carmen Fratto, M.D., and Plaintiff's primary care provider, Jeanne Pierce, Registered Physician Assistant ("RPA"). (T. 14-17.) The ALJ further relied on objective medical evidence in the record and Plaintiff's activities of daily living. (T. 17-19.)

Dr. Puri performed a consultative exam on September 28, 2012. (T. 190.) Dr. Puri noted on examination that Plaintiff's chest and lungs were clear to auscultation, percussion was normal, there was no significant chest wall abnormality, and there was normal diaphragmatic motion. (T. 192.) Dr. Puri conducted pulmonary testing. Spirometry showed a forced vital capacity ("FVC") of 4.70 liters of predicted or 101% and forced expiratory volume ("FEV$_1$") of 2.83 liters of predicted or 80%. (T. 192.)[1] Dr. Puri concluded the premeditated testing results indicated "mild obstruction." (*Id.*)

---

[1] The Listings offer a useful explanation of spirometry. Spirometry is an objective form of pulmonary function testing. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00(A), (E). Two particular measurements are important: "one-second forced expiratory volume (FEV$_1$) and forced vital capacity (FVC)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00(E). A person's reported FEV$_1$ and FVC are gauged in relation to the predicted normal value of each measure for an individual. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00(E) (triggering use of a bronchodilator "if the pre-bronchodilator FEV$_1$ value is less than 70 percent of the predicted normal value"). The predicted normal value for each person is a fixed value based off of a person's height. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00(E) ("The pulmonary function tables in 3.02 and 3.04 are based on measurement of standing height without shoes."); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02(A), Table I (establishing Listed disability for "[c]hronic obstructive pulmonary disease ... with the FEV$_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes").

Dr. Puri provided a medical source statement in which he opined that Plaintiff "did not have any objective limitations to communication, fine motor, or gross motor activity. There were no objective limitations to [Plaintiff's] gait or to his activities of daily living on examination today . . . It is recommended that he not be in an environment which would increase his respiratory complaints. He would have mild limitations to moderate exertion." (T. 192.)

Dr. Fratto reviewed the medical evidence in the record and issued an opinion on March 1, 2013. (T. 247.) Dr. Fratto stated Dr. Puri's notations indicated a "normal pulmonary examination," with no indication of congestive heart failure ("CHF"), and spirometry testing revealed "normal" $FEV_1$ and FVC with decreased ratio. (*Id.*) Dr. Fratto noted chest x-rays from 2011 indicated "mild hyperexpansion." (*Id.*) He ultimately opined Plaintiff suffered from COPD which was non-severe. (*Id.*)

Plaintiff received his primary care from Ms. Pierce. On August 19, 2011, he presented to her office to establish care. (T. 239.) On examination, Ms. Pierce noted decreased breath sounds, otherwise her physical examination was normal. (*Id.*) She prescribed Plaintiff medication to treat his COPD. (*Id.*) On September 8, 2011, Plaintiff had a follow up appointment with Ms. Pierce and indicated he was "improving with medication." (T. 237.) Ms. Pierce again noted decreased breath sounds. (*Id.*) Plaintiff was advised to follow up in three months. (*Id.*) On September 29, 2011, Plaintiff presented to Ms. Pierce. (T. 235.) Ms. Pierce noted Plaintiff refused a sleep study. (*Id.*) Ms. Pierce noted decreased breath sounds. (*Id.*) On October 27, 2011, Plaintiff presented with a cough and sore throat. (T. 233.) Ms. Pierce noted decreased breath sounds and she altered his medication. (*Id.*) On December 2, 2011, Plaintiff presented

with a cold and thrush; decreased breath sounds were noted. (T. 231.) On December 8, 2011, Plaintiff followed up on his thrush with no other complaints. (T. 229.) At that time, Ms. Pierce noted Plaintiff's lungs were clear to auscultation bilaterally. (*Id.*) On January 9, 2012, Plaintiff presented with sinus congestion and Ms. Pierce noted his lungs were clear to auscultation. (T. 227.) On February 23, 2012, Plaintiff sough pre-operative clearance for dermatology. (T. 225.) At that time his lungs were clear to auscultation and he was cleared for surgery. (*Id.*) On August 2, 2012, Plaintiff presented for a follow up on his COPD. (T. 223.) Plaintiff reported he was "doing well," had "occasional [shortness of breath] with exertion," and denied active wheeze or cough. (*Id.*) Ms. Pierce noted his lungs were clear to auscultation bilaterally. (*Id.*) On December 20, 2012, Plaintiff presented to Ms. Pierce and requested she complete paperwork for disability. (T. 221.) Ms. Pierce noted Plaintiff presented "is trying to apply [for disability] based on COPD restrictions," she then noted Plaintiff ambulated without assistance, he did not require oxygen, he drove, he performed all his activities of daily living without assistance, and he could walk greater then 50 feet without stopping. (*Id.*)[2] On September 27, 2013, Plaintiff presented for follow up on an upper respiratory infection and for a medication refill. (T. 253.) Ms. Pierce observed Plaintiff's lungs sounds as "scattered, rhonchi, wheezes." (*Id.*)

Plaintiff testified he could perform many activities of daily living. For example, Plaintiff testified he cared for his disabled daughter, drove, took public transportation, went for mile long walks, cared for personal needs, cooked, cleaned, did laundry, worked in his yard, shopped, and socialized. (T. 29, 35-37, 184, 186, 190.) Plaintiff testified he "probably could" work as an interior painter again. (T. 32.) Plaintiff testified

---

[2] The record does not contain "disability paperwork" from Ms. Pierce.

that "the medications work, sometimes fairly well, so there's no need to see [Ms. Pierce]." (*Id.*)

Plaintiff argues substantial evidence supported the conclusion that Plaintiff's COPD was a severe impairment because at the hearing the VE testified, based on the hypothetical posed by the ALJ[3], Plaintiff would be unable to perform his past work. (Dkt. No. 12 at 2-4 [Pl.'s Mem. of Law].)[4]

Plaintiff appears to argue that his COPD was severe because the VE testified that an individual with Plaintiff's vocational profile and an RFC for light work in a clean air environment with no exposure to temperature extremes could not perform his past relevant work. (Dkt. No. 12 at 3.) However, as stated by Defendant, the RFC presented to the VE, and any testimony based on it, was wholly irrelevant because the ALJ did not find that Plaintiff had that RFC or any of the limitations included therein. (Dkt. No. 13 at 10 [Def.'s Mem. of Law].) The ALJ did not make an RFC determination, because his analysis ended at step two of the process. (T. 15.) The hypothetical posed to the VE at Plaintiff's hearing was just that – a hypothetical, and did not constitute substantial evidence and was simply a hypothetical.

Alternatively, Plaintiff appears to argue that his COPD should be considered a severe impairment because it prevented him from "performing the basic work activities at his prior exertional levels." (Dkt. No. 12 at 3 [Pl.'s Mem. of Law].) However, the

---

[3] The ALJ posed a hypothetical to the VE which was based on Plaintiff's age, education and work experience. (T. 43-44.) The ALJ limited Plaintiff to "light work with no exposure to extremes of temperature. Work would have to be in a clean-air environment such as found in an office building or shopping mall." (T. 45.) The VE testified that Plaintiff's past relevant work was generally performed at the medium exertional level, even though Plaintiff testified he performed it at the light exertional level. (T. 44.)

[4] Plaintiff does not assert that the ALJ erred in his step two conclusion that Plaintiff's medically determinable impairments of dysthymic disorder, anxiety and cannabis abuse were non-severe impairments.

standard at step two is not whether or not an impairment prevented Plaintiff from performing the basic work activities of his past work, but whether or not the impairment prevented basic work activities of "most jobs." 20 C.F.R. § 416.921(b) ("When [the Commissioner] talk[s] about basic work activities, [she] mean[s] the abilities and aptitudes necessary to do most jobs.").

In addition, the Regulations state that vocational factors are not part of the determination at step two of the sequential process: "[the ALJ] will not consider [Plaintiff's] age, education, and work experience." *Id.* at § 416.920(c). The ALJ's hypothetical to the VE took into consideration Plaintiff's age, education, and work experience. (T. 43-45.) Plaintiff's argument would fundamentally require the ALJ to factor in Plaintiff's age, education, and work experience at step two, which is contrary to the Regulations.

In *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287 (1987), the United States Supreme Court ruled upon the validity of the Regulations that define the scope of step two analysis, 20 C.F.R. § 416.920(c). *Yuckert,* 482 U.S. at 146–50. The Court held that the Regulations were consistent with their authorizing legislation, 42 U.S.C. 423(d)(1)(A), and that, in determining whether an impairment was severe, as provided by the Regulations, the Commissioner need not consider Plaintiff's age, education, and work experience. *Id.* at 146-47; 20 C.F.R. § 416.920(c). In so holding, the Court described the step two analysis as being a "threshold showing of severity." *Id .* at 147.

Therefore, Plaintiff's argument that his COPD should be considered severe because the VE testified that Plaintiff could not perform his past relevant work based on his age, education, and work experience is misplaced because the Regulations state

11

that step two encompasses "basic work activities" of "most jobs" without consideration of Plaintiff's age, education, or work experience. 20 C.F.R. §§ 416.920(c), 416.921(b). Further, the Court in *Yuckert* held that a plaintiff's vocational factors need not be considered by an ALJ in making a step two determination. *Yuckert,* 482 U.S. at 146-147.

Plaintiff next argues the ALJ erred in his determination that Plaintiff's pulmonary testing was "normal." (Dkt. No. 12 at 4 [Pl.'s Mem. of Law].) However, the ALJ did not err in his conclusion that the September 2012 pulmonary testing was "normal." To be sure, Dr. Puri, who conducted the test, stated the results indicated "mild obstruction." (T. 192.) However, Dr. Fratto reviewed Dr. Puri's notations, testing results, and physical examination findings, and based on that information he concluded the "mild" testing results were "within normal limits." (T. 247.) Therefore, based on Dr. Fratto's opinion, the ALJ properly concluded the testing results were "normal." (T. 16.)

The ALJ's determination at step two was supported by substantial evidence comprised of the medical opinions of Dr. Puri, Dr. Fratto, Ms. Pierce and Plaintiff's testimony. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), and 416.927(f)(2); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Substantial evidence from Ms. Pierce and Plaintiff also supported the ALJ's step two determination. Treatment notations from Ms. Pierce, as outlined above, failed to indicate Plaintiff's COPD limited his functioning in any respect. Ms. Pierce noted Plaintiff's lungs were "clear to auscultation" on various occasions. (T. 223, 225, 227, 229.) Ms. Pierce also noted Plaintiff requested disability paperwork; however, Ms. Pierce did not provide any functional limitations, instead she noted Plaintiff was ambulatory, did not require oxygen, drove, was independent in his activities of daily living, and could walk 50 feet without stopping. (T. 221.) Plaintiff's testimony, as outlined herein, also failed to indicate he had more than minimal functional limitations due to his COPD.

In sum, Plaintiff's argument that "basic work activities" at step two equated to "basic work activities of Plaintiff's past work" was misplaced. Basic work actives at step two relate to "most jobs," not past work. The ALJ did not err in his conclusion that objective testing was "normal," because an acceptable medical source interpreted the findings as "normal." Further, substantial evidence supported the ALJ's step two determination that Plaintiff's COPD was a non-severe impairment. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir.2009). Here, there is such relevant evidence, from Dr. Puri, Dr. Fratto, Ms. Pierce and Plaintiff's testimony, that a reasonable mind might accept as adequate to support the ALJ's step two determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 22, 2016

*[signature: Bill Carter]*

William B. Mitchell Carter
U.S. Magistrate Judge